IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| In re: ) | |
| ) | Case No. 94-70883 |
| XYZ OPTIONS, INC., ) | Chapter 7 Proceeding |
| ) | |
| Debtor. ) | |
| | |
| DONALD L. DIONNE, as the ) | |
| Trustee of the Bankrupt Estate ) | |
| of XYZ Options, Inc., ) | |
| ) | |
| Plaintiff, ) | CIVIL ACTION NO. |
| ) | |
| vs. ) | CV-95-J-329-W |
| ) | |
| WILLIAM MUSCARELLA, et al, ) | |
| ) | |
| Defendants. ) | |

FILED 99 NOV -5 PM 12:02 U.S. DISTRICT COURT N.D. OF ALABAMA

ENTERED NOV 5 1999

**MEMORANDUM OPINION**

The Trial of this cause having proceeded before this Court without a jury, and the remaining issues having been duly heard, the Court makes the following Findings of Fact and Conclusions of Law based upon the evidence presented.

**Findings of Fact**

1. Plaintiff, Donald L. Dionne, is the duly authorized Trustee in Bankruptcy of the estate of XYZ Options, Inc. (hereinafter referred to as the "Debtor").

2. Defendant, XYZ Trading Company, Inc. (hereinafter referred to as "Trading"), is an Alabama corporation that did business in the Northern District of Alabama. At all times material

326

to the events in this case, all of the capital stock of Trading was owned by William H. Muscarella (hereinafter referred to as "Muscarella").

3. Defendant, Steven D. Scott (hereinafter referred to as "Scott"), is an individual who was formerly employed by the Debtor.

4. Defendant, Harpole Steel Buildings, Inc. (hereinafter referred to as "Harpole"), is a stakeholder in that it is in possession of a steel frame for a metal building and certain funds belonging to the Debtor and Harpole has admitted in its <u>Answer</u> that it will deliver this property to the appropriate party as directed by this court.

5. None of the remaining Defendants complied with the Pretrial Order in that they did not file with the Court a witness list, exhibit list or designation of deposition testimony.

6. In 1988, Debtor entered into a contract with Machinery Trade Company (hereinafter referred to as "MTC") to construct a carbide cutting tool plant in Baghdad, Iraq.

7. Debtor performed under the MTC contract and was paid by making draws against a Letter of Credit that was confirmed by Banca Nazionale Del Lavoro (hereinafter referred to as "BNL").

8. In the fall of 1989, BNL defaulted by not paying the Debtor in accordance with the Letter of Credit and litigation was filed in the United States District Court for the Northern District of Georgia.

9. In August of 1990, the Republic of Iraq invaded the Republic of Kuwait, resulting in several Executive Orders issued by former President George W. Bush. These Executive Orders prevented the Debtor from completing its remaining obligations under the MTC contract. At this time, the carbide cutting tool plant in Baghdad was substantially complete.

10. As a result of the BNL litigation and in July of 1993, the Honorable Horace T. Ward,

United States District Judge, found that the Debtor was entitled to recover from BNL the principal sum of $2,126,782.88.

11. In November of 1993, First Phoenix Capital, Inc. (hereinafter referred to as "FPC") obtained a consent judgment against the Debtor and perfected its interest in the proceeds of the BNL Letter of Credit. In November or December of 1993, the Debtor and FPC agreed to a settlement of their disputes and to resolve three pending lawsuits. At this time, and at all material times thereafter, the Debtor was insolvent and several creditors of the Debtor had reduced their claims to judgment. All of these events referred to in this Paragraph will be collectively referred to as the "Settlement." The effect of the Settlement was to make FPC a secured creditor with a first priority lien against the proceeds of the BNL letter of credit, ahead of the creditors of the Debtor. The Debtor intended to hinder, delay or defraud its creditors by entering into the Settlement. The Debtor received less than reasonably equivalent value for the transfers made in connection with the Settlement.

12. In March of 1994, a Final Judgment was rendered by the United States District Court for the Northern District of Georgia in favor of the Debtor and against BNL in the amount of $2,683,626.30 (hereinafter referred to as the "BNL Judgment"). The BNL Judgment was satisfied by the payment of $2,691,645.74 from BNL to the Debtor's attorneys.

13. In April of 1994, after the attorneys were paid $350,000 for legal services rendered, the Debtor's attorney wire transferred to FPC the sum of $2,341,645, which were the net proceeds of the BNL Judgment. Absent the Settlement, these funds ($2,341,645) belonged to the Debtor, not to FPC.

14. An Involuntary Bankruptcy Petition was filed against the Debtor on April 28, 1994 in the United States Bankruptcy Court for the Northern District of Alabama, Western Division.

Subsequently an Order for Relief was entered and the Plaintiff was appointed as the Trustee.

15. FPC, by then called First Alabama Capital (hereinafter referred to as "FAC") and controlled by Muscarella, transferred $550,000 of these funds to several different persons, firms or business entities. The source of this $550,000 was the payment and satisfaction of the BNL Judgment. In May of 1994 and after the Involuntary Bankruptcy was filed, Trading received by transfer $250,000 of the $550,000 from FPC (FAC) and or Muscarella. In May of 1994, Scott received by transfer $15,800 of the $550,000 from FPC (FAC). Absent the Settlement, these funds belonged to the Debtor. These transfers were enabled by the Settlement.

16. After the Involuntary Bankruptcy Petition was filed, Trading used approximately $58,000 to purchase a steel frame for a metal building and a prepayment of the erection of the steel frame. This steel frame is currently in the possession of Harpole. Approximately $13,000 of the monies paid was for the cost of erecting the steel building. The monies used to purchase this steel building frame and prepaid erection costs belonged to the Debtor.

17. At the time the Bankruptcy Court entered a Preliminary Injunction, Trading still had in its possession the sum of $37,912.18, the source of which was the BNL Judgment. These funds, plus interest earned by the Plaintiff, belong to the Debtor, because they are the product of a voidable transfer, and were required to be turned over to the Plaintiff and held in escrow, at interest, pending final adjudication.

## Conclusions of Law

1. This Court has jurisdiction over the subject matter and in personam jurisdiction over the remaining Defendants. 28 U.S.C. § 1334(b). Venue is proper in this District. 28 U.S.C. § 1409. The reference was withdrawn in this case and this Court is sitting as a Bankruptcy Judge in this

proceeding. 28 U.S.C. § 157(d).

2. The Settlement, including all of its transfers and releases, was a voidable transfer under Bankruptcy law, Alabama law and Arizona law. 11 U.S.C. § 548(a); Alabama Code § 8-9A-4 (1975); Arizona Revised Statutes § 44-1004 (1990).

3. The Plaintiff is not bound by the November, 1993 consent judgment in favor of FPC. Pepper v. Litton, 308 U.S. 295, 60 S.Ct. 238 (1939).

4. The Debtor had an interest in the $2,341,645 wire transferred to FPC in April of 1994, which included the funds subsequently transferred to Trading, Scott and Harpole. Accordingly, the foregoing funds are property of this Bankruptcy estate. 11 U.S.C. § 541.

5. Both Defendants, Trading and Scott, were "mediate or immediate transferees" of property of this Bankruptcy estate as they both received these funds from FPC (FAC), the "initial transferee." 11 U.S.C. § 550(a)(1).

6. The Plaintiff is entitled to recover from Defendant, Scott, in the amount of $15,800, plus prejudgment interest pursuant to 11 U.S.C. § 550(a).

7. The Plaintiff is entitled to recover from Defendant, Trading, in the amount of $250,000, plus prejudgment interest. The property that was formerly in the possession of Defendant ,Trading, that was transferred to the Trustee in escrow as a result of the Preliminary Injunction is property of this estate. 11 U.S.C. § 541(a).

8. Defendant, Harpole, is a "mediate or immediate transferee" as they received the funds to purchase the steel building from Trading. Defendant, Harpole, does not claim any interest in the steel building or the erection costs that was paid for by using property of this Bankruptcy estate. Defendant, Harpole is directed to turn over the steel building and the prepaid erection costs to the

Plaintiff. 11 U.S.C. § 542. (See Answer of Harpole Steel Building, Inc. filed on December 28, 1994)

9. Had any of the remaining Defendants sought to offer any documentary evidence, deposition testimony or testimony of any live witness, the Court would not have allowed same and would have enforced the provisions of the Pretrial Order against them.

10. The Findings of Fact and Conclusions of Law contained herein are not binding on any Defendant, other than Trading, Scott and Harpole.

11. The Court will enter contemporaneously a Judgment in conformity with this Memorandum Opinion.

This the __5__ day of November, 1999.

_____
Inge P. Johnson
United States District Judge

Copies to:   Jerry W. Schoel, Esq.
             Douglas J. Centeno, Esq.
             William R. Murray, Esq.
             XYZ Trading Company, Inc.
             Steven D. Scott
             R. Cooper Shattuck, Esq.
             John Morrow, Esq.
             Thomas L. Hunt, Esq.
             Ron Dozeman
             Faye Condo
             Per Wardhammer
             Vanessa Bryson
             Patrick Keating, Esq.
             Ralph Zuzulo, Esq.